UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL VON JONES,<br><br>                    Plaintiff,<br><br>        v.<br><br>CHAPUNGU SAFARIS, a partnership,<br>CHAPUNGU SAFARIS AFRICA<br>(PRIVATE) LIMITED, a limited liability<br>company organized under the laws of<br>Zimbabwe; RAYMOND TOWNSEND<br>and PATRICIA TOWNSEND, husband<br>and wife; JACQUES HARTZENBERG<br>and SONJA THOMPSON, husband and<br>wife,<br><br>                    Defendants. | Case No. 1:11-cv-00027-BLW<br><br>**MEMORANDUM DECISION AND<br>ORDER** |

**INTRODUCTION**

Defendants Chapungu Safaris Africa (Private) Limited, Raymond Townsend and

Patricia Townsend move for summary judgment (Dkt. 45) and defendant Jacques

Hartzenberg joins the motion (Dkt. 46).  The Court heard argument on August 7, 2013

and now issues its decision.  For the reasons explained below, the Court will deny the

motion.

# BACKGROUND

In 2006 and 2007, plaintiff Michael Jones went on big-game hunts with Chapungu Safaris in Zimbabwe.  Although Chapungu billed Jones for the 2006 trip in December 2006, the company presented a revised bill to Jones two years later, in December 2008. This revised bill included new charges for the 2006 hunt, plus charges for the 2007 hunt. *See* Dkt. 49, at 4-5, 7.  Jones disputed the new charges.

Before this dispute arose, Jones and Raymond Townsend agreed to form a joint venture whereby Jones would ship vehicles to Zimbabwe and Raymond sell them.  In keeping with that agreement, in June 2008, Jones sent two Toyota LandCruisers to Zimbabwe.  Jones also says he later sent four other vehicles to Zimbabwe:  two Landrover Anabels, a Chevy Suburban, and a Ford pickup.[1]  *See Letter from PL Townsend to the American Embassy*, Dkt. 45-3, at 26-30 (referring to a "first consignment of two old landcruiser station wagons", *id.* at  26; "another two Santana landrovers", *id.* and "another 2" that apparently arrived afterward, *id.* at 27).

Meanwhile, the parties' relationship deteriorated as they fought over charges related to the 2006 and 2007 safaris as well as the status of some of the vehicles Jones had shipped to Zimbabwe.  In early 2009, the Townsends indicated that they intended to keep vehicles "as security" for Jones' alleged outstanding balance on the 2006 and 2007 safari bills.  *See Feb. 20, 2009 email from PL Townsend to Mike Von Jones,* Dkt. 45-3, at

---

[1] Defendants indicate that they "dispute the disposition of the remaining [four] vehicles, and particularly who is responsible for the disposition of those vehicles, . . . ." but indicate that that dispute is irrelevant to this motion.  *See Mot. Memo.*, Dkt. 45-1, at 3-4.

32.  Then, in March, 2009, Patricia Townsend sent an email to Jones, which stated:

"YOU WILL GET THE FINAL HUNTING BILL TODAY WHICH YOU MUST PAY

IMMEDIATELY . . . .  UNTIL THEN YOU CAN KISS ALL THOSE VEHICLES

GOODBYE AS THEY WILL BE SOLD TO DEFRAY EXPENSES IF IT IS NOT

PAID.  IT IS VERY SIMPLE."  *Mar. 2, 2009 email from Pat-Chapungu Safaris to Mike*

*Von Jones,* Dkt. 52, at 5.

Jones says he has not been paid for these vehicles and that he does not know

where they are.  He sued in January 2011, alleging three claims:  (1) breach of contract;

(2) conversion; and (3) fraud.  Jones concedes his fraud claim should be dismissed, so the

Court will focus on the remaining two claims.

**ANALYSIS**

**1.     The Contract Claim**

 The Court will deny defendants' motion for summary judgment of plaintiff's

breach-of-contract claim.  Before addressing the substantive arguments, however, the

Court will take up defendants' recent assertion that Zimbabwe law governs this claim.

**A.  Defendants' Invocation of Zimbabwe Law**

Defendants' invocation of Zimbabwe law came as a surprise because they moved

for summary judgment on the grounds that Idaho law governed this entire action.  *See*

*Mot. Mem.*, Dkt. 45-1, at 9-11 (citing various Idaho authorities).  In a supplemental, post-

hearing brief, however, defendants argued that Zimbabwe law governs the contract claim.

*See Defendants' Supp. Br.*, Dkt. 61, at 2-3.

Federal Rule of Civil Procedure 44.1 applies when a party seeks to raise an issue about a foreign country's laws.[2]  The party must (1) raise the issue in the pleadings or in another writing, and (2) explain the foreign law so that the court is in a position to apply the foreign country's law to the facts before it.  *See, e.g.*, *Bel-Ray Co., Inc. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 440 (3d Cir. 1999).  If an issue of foreign law is not raised in the pleadings, the notice provided must be "reasonable."  *DP Aviation v. Smith Indus. Aerospace & Defense Sys., Ltd*, 268 F.3d 829, 846 (9th Cir. 2001).  The district court, in its discretion, decides what is "reasonable."  *Id.*

District courts should consider at least the following factors in determining reasonableness:  "The stage which the case had reached at the time of the notice, the reason proffered by the party for his failure to give earlier notice, and the importance to the case as a whole of the issue of foreign law sought to be raised, . . . ."  Fed. R. Civ. P. 44.1, Advisory Committee's Notes.  As for the timing of the notice, there is no bright-line rule.  *See id.*  Generally, however, the Ninth Circuit has said that if foreign law is not raised in the pleadings, the party should give notice "before or during the pretrial conference, and normally a contention of application of foreign law should be disclosed at the latest in the pretrial order."  *DP Aviation*, 268 F.3d at 847.  But a notice given before the pretrial conference might still be unreasonable under Ninth Circuit authority.

---

[2] Rule 44.1 provides:

> A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing. In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law.

The key is that the party seeking to invoke foreign law should do so "as early as is practicable and, in any event, at a time that is reasonable in light of the interests of all parties and the court." *Id.* at 847.

The Court finds that defendants' notification to the plaintiff and the Court regarding Zimbabwe law unreasonable.

First, the defendants seeking to apply Zimbabwe law to this claim have not explained why they did not give notice earlier. These defendants first appeared nearly two years ago, in December 2011. *See* Dkt. 21 (Dec. 9, 2011 motion to dismiss for lack of jurisdiction). They answered the complaint nearly a year ago, in October 2012. *See* Dkt. 39 (Oct. 17, 2012 answer to amended complaint).

Second, defendants moved for summary judgment based on Idaho law, putting plaintiff and the Court to the task of analyzing the issues under Idaho law. Changing course now would be inefficient and arguably prejudicial to the plaintiff.

Third, not only have defendants failed to explain Zimbabwe contract law to the Court, they concede – even after the summary judgment hearing – that neither party is "presently in a position" to do so. *Supp. Br., Dkt.* 61, at 3. They then suggest that the Court might want to pass on the difficult issues arising within the contract claim in accordance with the international comity doctrine.[3] *Id.* Raising the specter of foreign law

---

[3] The Court will not abstain from deciding a question of law under the international comity doctrine. *See generally Sarei v. Rio Tinto, PLC*, 487 F.3d 1193, 1211 (9th Cir. 2007) (district court has discretion to decline to decide a question of law on the basis of the international comity doctrine). Among other things, this doctrine potentially applies only if there is a true conflict between foreign and domestic law. *See id.* Defendants have not demonstrated any conflict, as they have not explained Zimbabwe law. Further, this case has been pending for two and one-half years and the parties have pursued the matter to summary judgment. A trial date will be set shortly.

without any meaningful attempt to explain that law or how it applies to the facts is unreasonable, particularly at this stage in the proceedings.  *See generally Bel-Ray,* 181 F.3d at 440 (explaining the dual burden under Rule 44.1 to (1) give notice about foreign law and (2) explain that law).

Given defendants' unreasonable notice about the potential applicability of Zimbabwe law, the Court will apply Idaho law to the contract claim.  *See Comm'l Ins. Co. v. Pac. Peru-Constr. Corp.,* 558 F.2d 948, 952 (9th Cir. 1977) (applying forum law where parties failed to raise issue of foreign law's applicability); Restatement (Second) Conflict of Laws § 136 cmt. h (1971) ("[W]here either no information, or else insufficient information, has been obtained about the foreign law, the forum will usually decide the case in accordance with its own law, except when to do so would not meet the needs of the case or would not be in the interests of justice.").

**B.  Idaho Law**

Under Idaho law, there are triable factual issues on plaintiff's contract claim.

In his complaint, Jones alleges the existence of two separate contracts:  (a) an alleged contract related to big-game hunting safaris (the safari contract) and (b) an alleged contract between Raymond Townsend and Jones whereby Raymond would sell vehicles plaintiff sent to Zimbabwe (the import contract).  *See Am. Compl.,* Dkt. 34, ¶¶ 5-12.  Defendants contend they are entitled to summary judgment regarding an alleged breach of either contract claim.  In opposing this motion, plaintiff did not address the safari contract; he focused solely on the import contract.  *See Response*, Dkt. 47-1 at 6-7. The Court will follow suit.

Defendants argue that the import contract is too uncertain to be enforced. This argument will typically be an uphill battle because "[t]he law does not favor, but leans against the destruction of contracts because of uncertainty; . . . ." *Barnes v. Huck,* 540 P.2d 1352, 1357 (1975) (citing 11 *Williston on Contracts* 813, § 1424 (3d ed. 1968)). The "general rule is that a contract is enforceable if it is 'complete, definite, and certain in all its material terms, or contain[s] provisions which are capable themselves of being reduced to certainty." *General Auto Parts Co. v. Genuine Parts Co.*, 979 P.2d 1207, 1215 (Idaho 1999). Absolute certainty is not required, however. The key is that "[t]he parties' obligations must be identified so that adequacy of performance can be ascertained." *Id.* (citation omitted). Stated differently, there is no contract only when "the essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken . . . ." Restatement (Second) Contracts § 33 cmt. a (1981). "Generally, the determination of the existence of a sufficient meeting of the minds to form a contract is a question of fact to be determined by the trier of fact." *Shields & Co. v. Green*, 606 P.2d 983, 986 (Idaho 1980).

Here, defendants concede that there was an agreement "to import cars and sell them in Zimbabwe . . . ." *See Mot. Mem.*, Dkt. 45-1, at 11. Several documents authored by the defendants acknowledge the existence of this basic agreement. *See, e.g., Mar. 2009 letter from Townsend Enterprises to the American Embassy in Harare,* Dkt. 45-3, at 26 ("Mike Jones and Ray Townsend decided they would import vehicles and start a business in Zimbabwe, selling 2nd hand vehicles."). There is, therefore, ample evidence that the parties intended to contract. It is also relatively easy to determine if Raymond

kept his end of the agreement; viewing the evidence and inferences favorably to the plaintiff, if Raymond did not sell the vehicles, he breached the parties' agreement.

The defendants, however, focus on what is *not* in the alleged agreement in urging the Court to find that the agreement is not sufficiently definite.  They point out that Jones "has not identified a provision in the vehicle arrangement between the parties that would forbid the Townsends from trading the vehicles, securing their transfer to Zimbabwe, or holding them as security under certain circumstances."  *Mot. Mem.*, Dkt. 45-1, at 11.  But none of these points reveals a fatal uncertainty about the basic parameters of the agreement.  The evidence supports a conclusion that Jones agreed to send vehicles to Zimbabwe and Townsend agreed to sell them.  Even if the parties did not discuss or agree to other collateral terms (i.e., whether Townsend could keep the vehicles as security), this does not show uncertainty as to the basic agreement itself.

There is, however, another potential problem with the agreement.  There is no price term.[4]  The Idaho Supreme Court has held that "[t]o be enforceable by a court, a contract must provide for a definite price or for a means of determining the price." *Garmo v. Clanton*, 551 P.2d 1332, 1335 (Idaho 1976).  The court has made such statements in cases involving real estate contracts, *id.*, and in a cases involving other contracts.  *See Syringa Networks, LLC v. Idaho Dept. of Admin.,* 305 P.3d 499, 508

---

[4] The defendants did not raise this point, but it was discussed during oral argument and the Court requested supplemental briefing, which the parties have supplied.  Defendants' supplemental brief was not on point.  It addressed reformation.  Reformation applies to written contracts, and plaintiff has not alleged a written contract.  Granted, the Court loosely used the term "reformation" during oral argument, but in context, it was relatively clear that the Court was questioning whether a missing price term is necessarily fatal to a contract – not whether a written contract can be reformed.

(Idaho 2013) (teaming agreement was not enforceable because, among other things, the parties failed to agree on price).

In this case, there is no evidence regarding what amount Raymond would be paid for his services. *See Jones Aff.*, Dkt. 23-1 ¶ 5 (indicating only that the parties agreed Raymond would sell the vehicles and retain "a percentage of the sale price"). The contract is nonetheless enforceable, however, because plaintiff has submitted evidence demonstrating that he performed his part of the contract. Generally, if a party partly performs an otherwise unenforceable contract, that performance "may remove the uncertainty and establish that a contract enforceable as a bargain has been formed." Restatement (Second) Contracts § 34(2) (1981). Professor Corbin elaborates:

> That one of [the parties], with the knowledge and approval of the other, has begun performance is nearly always evidence that they regard the contract as consummated and intend to be bound thereby. It may also aid in the interpretation of their words with respect to the character of the performances to be rendered. In this way, the indefiniteness may be cured, or at least reduced. The fair and just solution may then be the enforcement of promises rather than a decision that no contract exist . . . . When one party has fully performed, the argument that the contract is too indefinite usually will not be sustained.

*Corbin on Contracts*, § 4.1 at p. 542; see also id § 4.7 at pp. 606-13 (rev. ed. 1993).

Here, when the evidence is viewed favorably to Jones, he performed with defendants' knowledge and approval. *See, e.g., June 23-26, 2008 email exchanges between plaintiff and Pat Townsend under the subject line "cruisers in Beira",* Dkt. 23-2, at 19-20 (plaintiff and defendant Pat Townsend discuss details for shipping the Landcruisers to Zimbabwe). This performance distinguishes Jones from plaintiffs in cases such as *Syringa Networks, LLC v. Idaho Department of Administration,* 305 P.3d

499 (Idaho 2013).  In *Syringa,* the Idaho Supreme Court refused to enforce a contract because, among other things, the parties had failed to agree on price, which was a material term of the contract.  But the plaintiff in *Syringa* had not performed.  Further, the Court essentially held that the parties had nothing more than an agreement to agree.  *See id.* at 508 (upholding the district court's rulings (1) that the "agreement lacked the material term of price" and (2) "that the logistics of how any work would be done was left to occur in subsequent negotiations").

Cases such as *Syringa,* therefore, do not control.  Rather, in this situation, the Court predicts that Idaho courts would supply the omitted price term, as permitted under Restatement (Second) of Contracts § 204 (1981).  Section 204 provides:

> When the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court.

Restatement (Second) Contracts § 204.  The Idaho Court of Appeal cited § 204 with approval in *Bischoff v. Quong-Watkins Properties*, 748 P.2d 410 (Idaho Ct. App. 1987).  Additionally, in UCC cases, Idaho Courts have willingly supplied omitted price terms in accordance with UCC § 2-305. *D.R. Curtis, Co. v. Mathews,* 653 P.2d 1188, 1191 (Idaho Ct. App. 1982).  There has been no argument that the UCC governs this case, but at least one commentator has observed that the UCC gap-filling provisions tend to spur development of garden-variety contract law:  "The Uniform Commercial Code has been a spur to the relaxation of the insistence by some courts that . . . an agreement must have a price or a successful price mechanism." *Corbin on Contracts* § 4.3, at p. 579.

Applying these principles here, the more appropriate course is to fill in the missing price term with a reasonable one.  This is so because (1) plaintiff's evidence plainly shows an intent to contract, (2) plaintiff performed his part of the contract, and (3) defendants did not raise the issue of a missing price term.  The Court will therefore deny defendants' motion for summary judgment on the contract claim.

In his post-hearing brief, plaintiff argued that he should be allowed to pursue an unjust-enrichment claim at trial, even though no such claim is included in his complaint.  Plaintiff will need to raise this issue in a motion to amend, and he will need to demonstrate "good cause" to amend.  *See Case Management Order,* Dkt. 41; *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992).  To establish good cause, he must show that, despite his diligence, he could not have filed a motion to amend by December 15, 2012, in accordance with the scheduling order in this case.

## 2.      The Conversion Claim

The Court will deny defendant's motion for summary judgment on the conversion claim.

"Generally, conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial or inconsistent with his or her rights therein depriving him or her of possession, permanently or for an indefinite time." *Med. Recovery Servs., LLC v. Bonneville Billing*, ___ P.3d ___, 2013 WL 204744 (Idaho Ct. App. Jan. 18, 2013) (citing *Schlieff v. Bistline*, 15 P.2d 726, 728 (Idaho 1932)).  Actual possession of the property by the owner is not necessary; all that is required is either title

to the property or a "right to possess the property at the time of the conversion." *W. Idaho*

*Prod. Credit Ass'n v. Simplot Feed Lots, Inc*., 678 P.2d 52, 54 (1984).

### A.    Damages

Defendants' lead contention is that plaintiff's conversion claim suffers from a

"fatal lack of evidence" of damages.  To prove damages, plaintiff is relying on his own

testimony about how much each vehicle is worth.  Defendants say this testimony is

worthless because it is "conclusory," "unsupported," and "unsubstantiated."  The Idaho

Supreme Court, however, has expressly held that "[t]he owner of an automobile is

competent to testify to its value." *Mitchell v. Dyer*, 341 P.2d 891, 893 (Idaho 1959)

(plaintiff's testimony about the value of car before and after an accident to establish

damages was properly admitted by trial court).  Plaintiff has therefore submitted

sufficient evidence to create a triable issue of fact regarding his damages.

### B.    Jones' Right to Possess the Vehicles

Defendants next contend that Jones failed to prove that he has the right to possess

the vehicles.  *Mot. Memo,* Dkt. 45, at 13.  They rely on the fact that the shipping

documents and invoices for vehicles list Valley Auto Brokers – not Jones – as the shipper

or the seller.  *See, e.g., Aug. 30, 2008 Bill of Lading*, Dkt. 49, at 2 (Bill of Lading from

Mediterranean Shipping Company, S.A. lists the shipper as "Valle [sic] Auto Brokers"

and the "consignee" as "Townsend Enterprises"); *Oct. 27, 2009 Bill of Entry Form*, Dkt.

45-3 (listing the exporter as Valley Auto Brokers and the consignee as Townsend

Enterprises  (PVT) LTD); *Jan. 10, 2008 Invoice from Valley Auto Brokers,* Dkt. 45-3, at

15 (Bates-stamped Chapungu 000003) (Valley Auto Brokers invoice for a Ford pick-up

and a GMC Yukon lists Townsend Enterprises as the customer).

But just because the automobiles were purchased or shipped under the name of

Valley Auto Brokers does not establish that Jones had no right to possess the vehicles.

Jones has submitted an affidavit explaining:

> For many years I conducted my individual business using the name of
> Valley Auto Brokers, with the permission of the owner of such company,
> which was located in Medford Oregon.  I bought and sold many dozens, if
> not hundreds of vehicles under that name, but as my own vehicles.  This is
> true for the vehicles in question, which I purchased in my own name and
> then shipped under the name of Valley Auto Brokers.

*Jones Aff.*, Dkt. 56, ¶ 4.

Defendants have two responses to this evidence.  Substantively, they say Jones'

testimony cannot explain away the lack of any documentary evidence establishing Jones'

ownership of the vehicles.  Procedurally, they say Jones' testimony about Valley Auto

Brokers should be barred because Jones did not identify his contact at Valley Auto

Broker in his initial disclosures.  Neither argument is persuasive.

### 1.    Jones' Testimony

As for the substance of Jones' testimony, defendants complain that it is "self-

serving," "bare," and "unsubstantiated."  They suggest that if Jones wants to survive

summary judgment, he has to produce documentary evidence, such as purchase and sales

agreements.  Documentary evidence would strengthen Jones' claim that he had the right

to possess the vehicles, but it is not necessary to survive summary judgment.  Idaho

courts are willing to look beyond the documents to ascertain what is actually going on

between the parties.  For example, the Idaho Supreme Court has held that plaintiffs can sue for conversion of a motor vehicle even if they do not have a certificate of title.  *See Johnson v. Bennion*, 211 P.2d 148 (Idaho 1949);[5] *see also generally* 63C Am. Jur. 2d *Property* § 41 ("the presumption of ownership created by the certificate of title to a vehicle is not conclusive, and may be rebutted by evidence demonstrating that another individual owns the vehicle in question").

This point is illustrated in *Johnson v. Bennion*, 211 P.2d 143 (Idaho 1949).  There, Bennion made a down payment on oil trucks and trailers.  *Id.* at 148.  Bennion then had the right to continued use of the vehicles so long as he made specified periodic payments, and the right to obtain certificates of title upon paying the total purchase price.  *Id.*  The seller later repossessed the vehicles contending that Bennion had failed to make timely payments and had damaged the equipment, thus forfeiting the right to purchase the equipment.  *Id.* at 149.  When Bennion sued for conversion, the seller argued that Bennion had no possessory right to the vehicles because he had not received the certificates of title.  *Id.* at 150.  The Idaho Supreme Court rejected this argument, reasoning that Bennion had superior right to possess the vehicles, notwithstanding the fact that he did not have a certificate of title.  *Id.  Accord Lake Philgas Serv. v. Valley Bank & Trust Co.*, 854 P.2d 951 (Utah Ct. App. 1993) (plaintiff successfully sued for conversion of a trailer despite the fact that the certificate of title was issued to someone else).

---

[5] *Johnson* was cited with approval in *State v. Bennett,* 246 P.3d 387, 390-91 (Idaho 2010).

Similarly, in this case, Jones' testimony that he purchased the vehicles is relevant evidence as to who owns the vehicles and who has a right to possess them. The record also contains evidence demonstrating that the defendants understood Jones owned at least some of the vehicles. For example, on January 12, 2009, Raymond wrote, "That landcruiser is coming in for a valuation and you will get your money for it." *Jan. 12, 2009 email from Pat-Chapungu Safaris to plaintiff*, Dkt. 50, at 6. Also on February 11, 2009, an email from Pat Townsend states, "Your insinuations that we have stolen *your vehicles* . . . is not correct and is insinuating defamation of character." *Feb. 11, 2009 email,* Dkt. 45-3, at 33 (Bates-stamped Chapungu000021) (emphasis added); *see also Jan. 12, 2009 email, time-stamped 2:41 a.m.*, Dkt. 50, at 7 ("your accusations that I have stolen *your vehicle"* are "ridiculous") (emphasis added).

Viewing all this evidence in Jones' favor, there is a triable issue of fact regarding whether he owned or had a right to possess the vehicles in question.

### 2. Defendants' Request to Bar Jones from Testifying About His Right to Possess the Vehicles

As for defendants' request to bar Jones from testifying about his right to possess the vehicles, they rely on Federal Rule of Civil Procedure 37(c)(1). This rule says that if a party violated Rule 26(a) by failing to identify a witness in the initial disclosures, then that party will not be allowed to use that witness "to supply evidence on a motion, or at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Defendants contend Jones violated Rule 26 by failing to identify

witnesses in his initial disclosures.  In particular, they say Jones should have identified his contact at Valley Auto Brokers.

Jones did not violate Rule 26(a).  All Rule 26(a) requires, in terms of disclosing witnesses, is that the disclosing party identify witnesses (along with what those witnesses know) that they "may use to support their  . . . claims . . . , unless the use would be solely for impeachment."  Fed. R. Civ. P. 26(a).  So if Jones did not intend to use witnesses from Valley Auto Broker to support his claims, he was not obligated to disclose them.

In opposing defendants' summary-judgment  motion, Jones did not rely on any persons affiliated with Valley Auto Broker to support his claim.  He relied on his own testimony, and nothing prevents Jones from saying that Valley Auto Broker's owner allowed him to buy vehicles under that entity's name.  It seems that defendants are the ones who are interested in tracking down witnesses at Valley Auto Brokers in an effort to undermine plaintiff's testimony on this point.  But their failure to do so is their problem, not plaintiff's.  As one treatise explains, "[t]here is no obligation to do the adversary's work and disclose witnesses harmful to the disclosing party's case."  Hon. William W. Schwarzer, Hon. A. Wallace Tashima & James M. Wagstaffe, *Federal Civil Procedure Before Trial* ¶ 11.233 (discussing Rule 26(a) disclosure obligations).

Further, defendants cannot say Jones sandbagged them by testifying that he bought vehicles under Valley Auto Broker's name.  Defendants themselves produced documents (with their initial disclosures) indicating that Jones was claiming to have purchased vehicles under Valley Auto Broker's name.  *See, e.g., Defendant's Rule 26 Disclosures*, Dkt. 45-3, at 11, 39 (Feb. 26, 2009 email from Jones, on the page Bate-stamped

Chapungu000027, says that "these goods were purchased and paid for by myself doing business as Valley Auto Brokers . . . ."). Defendants thus had the information they needed to conduct discovery about Valley Auto Brokers. They chose not to.

Under these circumstances, the Court will deny defendants' request for Rule 37 sanctions.

### 3. Defendants' Complaints Related to Discovery Responses Served Only on Defendant Jacques Hartzenberg

In addition to complaining about Jones' testimony, the Townsends and Chapungu complain that plaintiff did not serve them with responses to defendant Jacques Hartzenberg's interrogatories and document requests. They do not precisely articulate what they want the Court to do about this failure, but the Court has decided against sanctioning plaintiff.

Most significantly, plaintiff did not intentionally keep anything from these defendants. He filed his complaint in January 2011. He was able to serve defendant Jacques Hartzenberg almost immediately, but he had a harder time serving the other defendants. In fact, from January 2011 through December 2011, Hartzenberg was the only defendant who had appeared. *See generally Dec. 9, 2011 Motion to Dismiss,* Dkt. 21 (marking the Townsends and Chapungu's first appearance). During that time frame, in October 2011, plaintiff responded to Hartzenberg's interrogatories and document requests. He served the only defendant who had appeared. *See* Dkt. 48-1, 48-2.

After the new defendants arrived on the scene, they should have had an inkling that some discovery had been conducted. When plaintiff served his initial disclosures

upon the newly appearing defendants, the disclosures twice referred to plaintiff's prior discovery responses.  *See Plaintiff's Initial Disclosures,* Dkt. 42, at 2  (indicating relevant documents had "been disclosed in prior discovery answers"); *see also id.* at 1 (indicating that Jones would testify "as stated in previous Interrogatory Answers").  Chapungu and the Townsends chose not to follow up on this information.  Instead, they stood quietly by until summary judgment, and then represented that nobody had conducted any discovery.

These facts show that plaintiff made an understandable mistake in failing to serve his discovery responses on all defendants, as opposed to just defendant Hartzenberg.  Moreover, the other defendants have not identified any specific prejudice that arises from their failure to obtain these discovery responses earlier.  As far as the Court can tell, there is nothing new in the interrogatory responses.  In fact, Chapungu and the Townsends agree that "the discovery responses generally contain bare statements consistent with the allegations in the Complaint, . . . ."  *Reply*, Dkt. 58, at 4 n.1.  These defendants also suggest that they had already seen the documents plaintiff produced to Hartzenberg.  *Id.* ("much of the attachments presented in the opposition are identical to exhibits already in the record").  To put a finer point on it, Chapungu and the Townsends do not identify any particular document that changes the nature of this case, or that would have changed their approach to this case, if only they had known about it.

Under these circumstances, the Court will not sanction plaintiff.  Nor is the Court inclined to reopen discovery based on plaintiff's alleged failing.  If, however, both parties are amenable to reopening discovery in some limited fashion, for a limited time period,

they may file a proposed stipulation for the Court's consideration.[6]  The parties should keep in mind, however, that this case has been pending for a long time.  The Court intends to schedule the trial date soon enough to ensure that judgment is entered by no later than March 31, 2014.

**3.      Partnership Formation**

Finally, the Court turns to defendant Jacques Hartzenberg's motion for summary judgment.  Jones contends Hartzenberg formed a partnership, Chapungu Safaris, with the Townsends and is thus jointly liable for converting the vehicles.  *Resp.*, Dkt. 47-1, at 8.  The issue, then, is whether there is a triable factual issue regarding Hartzenberg's alleged status as a partner of Chapungu Safaris.

At the hearing, Hartzenberg raised two threshold matters.  First, he contended that plaintiff failed to adequately plead he was vicariously liable as a partner.  Second, he says that regardless, Zimbabwe law governs partnership issues, not Idaho law.  The Court is not persuaded by either argument

**A.      Pleading Issues**

As for the pleading issue, vicarious liability is not a separate claim in this context.  When a partnership is alleged, and it is further alleged that the partnership converted something, vicarious liability is a theory of liability for the underlying conversion claim.  *See generally* Idaho Code § 53-3-306 (with certain exceptions not alleged to be applicable here, "all partners are liable jointly and severally for all obligations of the

---

[6] After the hearing, but before this ruling was issued, plaintiff's counsel and counsel for Chapungu and the Townsends contacted Court staff and indicated that they were amenable to reopening the discovery period.

partnership unless otherwise agreed by the claimant or provided by law"); *Klam v. Koppel*, 118 P.2d 729, 733-34 (Idaho 1941) (recognizing that if a partnership converts an item, the owner may sue the partners jointly, or any member of the partnership individually, for conversion). Here, the plaintiff has adequately pleaded a conversion claim and he further alleges that Hartzenberg is being sued because he is a partner of Chapungu Safaris with the other defendants. *See Compl.*, Dkt. 34, ¶ 2 ("As partners, the named individuals are personally liable for the debts and obligations of Chapungu Safaris.").

### B.     Zimbabwe Law

As for the applicable law, the Court will apply Idaho law to the conversion claim and to any partnership issues arising within that claim. At this late stage in the proceedings, Hartzenberg's invocation of Zimbabwe law is unreasonable. *See discussion supra* ¶ 1.A.; *see generally* Fed. R. Civ. P. 44.1. Like the other defendants who belatedly sought to apply Zimbabwe law, Hartzenberg has not explained why he waited until the hearing on his summary-judgment motion to assert Zimbabwe law. Hartzenberg did not cite or discuss Zimbabwe law in his motion, relying instead on Idaho law.[7] Further, even at the hearing, when counsel first raised Zimbabwe law, he admitted that he had not "thought through" or "briefed" that country's law. Idaho law will therefore govern.

---

[7] Hartzenberg joined in the other defendants' motion for summary judgment, which relies totally on Idaho law.

### C.  Idaho Law

Idaho's legislature has adopted and codified the Uniform Partnership Act, which provides that "the association of two or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership." Idaho Code § 53-3-302(a).  "The question of whether a partnership exists between particular persons is a mixed question of law and fact. This means that what constitutes a partnership under established facts is a question of law for the court, but the existence of the facts necessary to bring the relation within the tests of partnership, or the determination whether a partnership exists under the evidence and the inferences reasonably drawn from the evidence, is a question of fact for the jury." 59A *Am. Jur.2d Partnership* § 182.  In other words, "where the facts are . . . . susceptible of only one reasonable inference, the question of whether a partnership exists between particular persons is one of law for the court." *Id*.

Plaintiff's evidence of a purported partnership comes mainly from advertisements for Chapungu Safaris.  On one advertisement, Hartzenberg's name and contact information, along with Raymond Townsend's, is listed underneath the Chapungu Safaris' name and logo.  Additionally, the "About Us" section of the advertisement reports that Raymond Townsend "joined forces with . . . Hartzenberg, to broaden the scope of the business to offer a bigger variety of game species in South Africa." *Undated Advertisement,* Dkt. 23-2, at 10. Another advertisement says, "Some time ago Ray hooked up with South African PH, Jacques Hartzenburg and Thanda-Jimu Lolwana who has [sic] a lifetime of experience in wildlife tourism, and together they are now achieving

great things and have together formed CHAPUNGU SAFARIS AFRICA, operational in both Zimbabwe and South Africa." *Undated Internet Document,* Dkt. 53, at 1.

Hartzenberg does not say anything about this evidence. His briefing consisted of a single sentence: "An additional basis for granting summary judgment in favor of Defendant Hartzenberg is that there is no evidence of a relationship between Defendant Hartzenberg and the Plaintiff regarding the actions complained of." *Joinder,* Dkt. 46, at 1.

The Court concludes that plaintiff's cited evidence is sufficient to create a triable factual issue as to whether Hartzenberg and Raymond Townsend associated together "to carry on as co-owners a business for profit . . . ." Idaho Code § 53-3-302.

## ORDER

Defendant Jacques Hartzenberg's Motion (Dkt. 46) to Join Defendants' Motion for Summary Judgment is **GRANTED**. That entire motion (Dkt. 45), including Jacques Hartzenberg's motion for summary judgment, is **DENIED**.

DATED: October 31, 2013

B. Lynn Winmill
Chief Judge
United States District Court